UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOYCE GARDNER,

      Plaintiff,

  v.

SHASTA COUNTY, GERALD BENITO, ELIZABETH LESLIE, ANGELA FITZGERALD, and CAROL GALL,

      Defendants.

No. 2:06-cv-0106-MCE-DAD

MEMORANDUM AND ORDER

Through the present action, Plaintiff Joyce Gardner ("Plaintiff") alleges that Defendants Shasta County ("County"), Gerald Benito ("Benito"), Elizabeth Leslie ("Leslie"), Angela Fitzgerald ("Fitzgerald"), and Carol Gall ("Gall") (collectively "Defendants") violated her right of free speech under the First Amendment to the United States Constitution and thereby violated her civil rights under 42 U.S.C. § 1983.

///
///
///

Plaintiff also brings several state law claims, including Intentional Interference with Contractual Relations, Interference with Prospective Economic Advantage, Defamation, and Intentional Infliction of Emotional Distress. Now before this Court is Defendants' Motion for Summary Judgment on all claims brought by Plaintiff.[1]

**BACKGROUND**

At all relevant times up to October 2004, Plaintiff was employed as the program director for the Shasta County Victim/Witness Assistance Program ("VW Program"), a division of the office of the Shasta County District Attorney. Defendant Leslie started with the District Attorney's Office in April of 2004 and was Plaintiff's immediate supervisor. Defendant Benito was the District Attorney and Leslie's supervisor. Defendant Gall worked in the VW Program unit and was a subordinate of Plaintiff. Defendant Fitzgerald was Plaintiff's successor, taking her position after Plaintiff's employment ended.

California's Child Abuse Treatment Program ("CHAT") provides a grant to the VW Program for counseling services to victims of child abuse, which in turn awards a sub-grant to a local therapy provider. In early 2004, the CHAT grant was up for renewal, having been previously awarded to Family Services Agency ("FSA") for the previous three years.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

Three providers applied for the sub-grant: FSA, New Directions to Hope ("NDTH"), and Creekside Counseling Center ("Creekside"). Plaintiff claims that her role was to relay information on the applicants to her supervisor, Leslie, who would then decide which provider was to receive the sub-grant.

In addition to applying to the VW Program for the CHAT sub-grant, the counseling service providers could also bid directly to the state, and against the Shasta County District Attorney's Office, for the main grant. Plaintiff claims that, after the decision was made to award the sub-grant to Creekside, Leslie indicated to her that she was going to notify FSA of the decision, but not NDTH. This would serve to deprive NDTH of the ability to apply directly to the state for the main grant. In spite of Plaintiff's protests regarding the dissimilar treatment of FSA and NDTH, Leslie allegedly instructed Plaintiff to not inform NDTH.

Plaintiff alleges that, as a result of her protests against Leslie's actions in the bidding process and as an effort to restrict her from speaking out further, among other motivating factors, she was subjected by all Defendants to repeated intimidation, scorn and humiliation, embarrassment, and false charges of mismanagement. Further, Plaintiff claims that, after the end of her employment with the county, Defendants interfered with her ability to seek employment elsewhere by communicating with prospective employers about Plaintiff's alleged work related improprieties.

///
///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also* Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

///
///
///

4

Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See* T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**ANALYSIS**

**1.   Right of Free Speech**

Defendants argue that Plaintiff's claim for violation of her First Amendment right of free speech fails as a matter of law because her protest of Leslie's actions was made pursuant to her official duties and not as a concerned citizen. Defendants cite Garcetti v. Ceballos, 126 S. Ct. 1951 (2006) in support of their argument. In Garcetti, plaintiff Ceballos worked as a deputy district attorney for the Los Angeles County District Attorney's Office. Id. at 1955. Ceballos determined that an affidavit used to obtain a critical search warrant contained serious misrepresentations. Id.

5

1  After writing a memo and otherwise expressing his concerns, he
2  claimed that he was subjected to a series of retaliatory
3  employment actions.  Id. at 1956.  Ceballos sued in the United
4  States District Court for the Central District of California on
5  the grounds that his memo was protected speech under the First
6  Amendment.  The District Court granted summary judgment against
7  Ceballos and in favor of defendants.  Id.
8       In upholding the District Court decision, the Supreme Court
9  stated that the controlling factor in the case was that Ceballos'
10 "expressions were made pursuant to his duties as a calendar
11 deputy."  Id. at 1956, 1959-1960.  The fact that Ceballos spoke
12 as a prosecutor in writing his memo to advise his supervisor
13 about how to best proceed with a pending case "distinguishes
14 Ceballos' case from those in which the First Amendment provides
15 protection against discipline."  Id. at 1960.  Ceballos wrote the
16 memo pursuant to his official duties because "that is part of
17 what he, as a calendar deputy, was employed to do."  Id.  "[W]hen
18 public employees make statements pursuant to their official
19 duties, the employees are not speaking as citizens for First
20 Amendment purposes, and the Constitution does not insulate their
21 communications from employer discipline."  Id.
22      In contrast to explaining why Cebellos' speech was properly
23 restricted, the Supreme Court also detailed conditions under
24 which statements by public employees may receive First Amendment
25 protection.  "The First Amendment protects a public employee's
26 right, in certain circumstances, to speak as a citizen addressing
27 matters of public concern."  Id. at 1957.
28 ///

6

1 The fact that a citizen works for the government does not remove
2 all speech protections from that citizen.  Id.  If employees are
3 "speaking as citizens about matters of public concern, they must
4 face only those speech restrictions that are necessary for their
5 employers to operate efficiently and effectively."  Id.  Employer
6 restrictions on speech are properly placed "only [on] the
7 expressions an employee makes pursuant to his or her official
8 responsibilities, not to statements or complaints ... that are
9 made outside the duties of employment."  Id. at 1961.
10    Further, the fact that views are expressed only inside the
11 office, and only to a supervisor, is not dispositive of whether
12 First Amendment protection applies.  Id. at 1959.  Constitutional
13 rights of free speech are also not removed by the fact that the
14 views expressed relate to the employment of the speaker.  Id.
15    The Supreme Court, however, did not establish a test for
16 determining when an employee's speech is made pursuant to his or
17 her employment.  Id. at 1961.  In Garcetti, because the parties
18 agreed that Ceballos wrote his memo as part of the normal course
19 of his duties, the Court had "no occasion to articulate a
20 comprehensive framework for defining the scope of an employee's
21 duties in cases where there is room for serious debate."  Id.
22 The Court did, nonetheless, foreclose the possibility of
23 employers restricting employees' rights of free speech "by
24 creating excessively broad job descriptions."  Id.
25 ///
26 ///
27 ///
28 ///

7

The issue then in the instant case is whether Plaintiff, in protesting the allegedly stated intention of Leslie to inform FSA, but not NDTH, of the opportunity to bid for the CHAT grant directly to the state, spoke within the scope of her duties as an employee. It is undisputed that part of Plaintiff's job requirements was to provide information about sub-grant applicants and the application process to Leslie. Also, as Plaintiff concedes in her deposition, she protested to Leslie about the unequal treatment of applicants, *in part* due to her "responsibility regarding the CHAT application process." Gardner Dep. 123:20-23.

However, as Garcetti counsels, the fact that Plaintiff's protests "concerned the subject matter" of her employment is "nondispositive" as to whether her expressions were made pursuant to her employment responsibilities. *See* Garcetti, 126 S. Ct. at 1959-1960. Further, Plaintiff claims that she also protested out of an ethical and moral duty as an ordinary citizen "to point out a potential conflict of interest in actions by state government officials addressing a matter of public concern." Gardner Decl. ¶ 6. Plaintiff further asserts that it was not one of her official job responsibilities to monitor her supervisor for potential misconduct. Id. ¶ 4.

Garcetti establishes that, with respect to the determination of whether a particular expression is within the scope of an employee's duties, "[t]he proper inquiry is a practical one."

///
///
///

8

<u>Garcetti</u>, 126 S. Ct. at 1961.  In that light, Plaintiff's statements of opposition to such an allegedly one sided, biased, and favorable treatment of one party over another, without any mention of a proper supporting basis for such action, is not easily construed as a duty within the scope of Plaintiff's employment, especially when that opposition was to the action of her supervisor.  It is difficult to imagine that Plaintiff was hired to, under any circumstances, serve as a restraint on arbitrary or biased actions taken by those charged with oversight of her own employment.

Therefore, viewing all the evidence in the light most favorable to the Plaintiff as the non-moving party, it cannot be said as a matter of law that Plaintiff's expressions of protest regarding Leslie's actions were wholly within her duties as an employee.  Accordingly, summary adjudication on this claim is not proper, and Defendants' Motion for Summary Judgment as to Plaintiff's claim for violation of her First Amendment right of free speech is DENIED.

**2.   Defamation**

Defendants argue that Plaintiff's claim for defamation fails as a matter of law because the statements allegedly made by Defendants were either true, privileged, not defamatory, or not made by Defendants.  "The tort of defamation 'involves (a) a publication that is (b) false, c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'"

9

1  Taus v. Loftus, 40 Cal. 4th 683, 720 (2007) (quoting 5 Witkin,
2  Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782).
3  California Civil Code section 47(c) provides that certain
4  communications made between interested persons regarding a matter
5  of common interest are privileged, if the statements are made
6  without malice.  Lundquist v. Reusser, 7 Cal. 4th 1193, 1203-1204
7  (1994).  A defendant bears the initial burden of demonstrating
8  that an allegedly defamatory communication is shielded by a
9  privilege, after which the plaintiff must show that the defendant
10 made the statement with malice.  Id. at 1208.
11     Plaintiff has alleged that the statements of each Defendant
12 were "false", "unprivileged" and "motivated by malice and ill
13 will."  Compl. ¶ 83.  That same allegation references paragraphs
14 51 and 53 to 60 of the complaint.  Paragraphs 51, 55, and 56
15 detail defamatory statements allegedly made by Defendant
16 Fitzgerald; 53, 57, and 60 reference Defendant Gall; 54
17 references Defendant Leslie; and 58 references Defendant Benito.
18 Defendant County may be held liable under respondeat superior, as
19 it is well established that a principal can be found responsible
20 for the malicious torts of employees acting within the scope of
21 their employment.  Mercado v. Hoefler, 190 Cal. App. 2d 12, 17
22 (1961).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

10

1    In moving for summary judgment on these claims, Defendants
2 must show that there is an "absence of evidence to support
3 [Plaintiff's] case." Anderson, 477 U.S. at 256.  Defendants must
4 therefore demonstrate that, when viewing evidence in Plaintiff's
5 favor, Plaintiff cannot reasonably prevail in establishing
6 Defendants' liability on at least one of the elements of
7 defamation.  *See* Diebold, Inc., 369 U.S. at 655, Taus, 40 Cal.
8 4th at 720.

9    In addressing the elements of defamation, Defendants expend
10 little effort in claiming that the alleged statements were not in
11 fact made.  Likewise, Defendants do not place significant
12 reliance on the affirmative defense of truth to dispose of the
13 element of falsity.  Defendants do attempt to ascribe the source
14 of several statements to individuals other than themselves,
15 claiming that the various Defendants were recipients of these
16 statements, not issuers.  However, Defendants point to evidence
17 which merely contradicts Plaintiff's contentions and thus have
18 not provided a sufficient basis to support summary judgment on
19 these elements.

20    Defendants characterize the statements "unethical", "greasy
21 palm", "stalking", "incompetent" and unlawfully withholding
22 $10,000 from a client, as not being defamatory.  These statements
23 are not ambiguous or innocent on their face, and do not require
24 extrinsic evidence to establish a defamatory meaning.  Indeed,
25 such statements by their very nature would likely have the
26 tendency to injure and cause special damage.
27 ///
28 ///

11

1    Defendants primarily attempt to establish a lack of evidence
2 supporting Plaintiff's case by claiming that the majority of
3 alleged statements made were shielded by the statutory privilege
4 found in California Civil Code section 47(c).  However, while
5 much effort is made in claiming the "common interest privilege,"
6 much less is done to support these claims with evidence as to why
7 the privilege should necessarily apply to the various
8 circumstances.  Defendants rely on cursory statements of
9 privilege applicability, without reference to affidavits, and
10 with scant discussion as to evidentiary bases for such claims.
11   Defendants list circumstances under which statements have
12 been found (or not contested) to fall within the statutory
13 privilege (*see* Def. Mot. Summ. J. 12, citing Taus, 40 Cal. 4th at
14 721), but fail to establish how those circumstances are
15 sufficiently indistinguishable from those present here.  Those
16 circumstances involve statements disseminated through a
17 conference, seminar, and two letters.  *See* Taus, 40 Cal. 4th at
18 721.  The instant case, however, concerns conversations made in
19 meetings of only a few individuals.  Substantial questions of
20 fact remain regarding the evidence in this case in terms of what
21 statements were made and the context in which they were issued.
22 Defendants have not, therefore, established that the statements
23 were made under circumstances afforded the defense of privilege.
24   Further, the privilege provided by section 47(c) "may be
25 lost if the defendant abuses the privilege by excessive
26 publication or the inclusion of immaterial matter which have no
27 bearing upon the interest sought to be protected, or if the
28 uttered statements are actuated by malice."

12

Deaile v. General Telephone Co., 40 Cal. App. 3d 841, 847 (1974) (internal citations omitted). In their initial moving papers, Defendants virtually ignore the "malice" provision of the section, which negates the privilege if present in the communication. *See* Id. In their Reply, Defendants assert that Plaintiff "simply has no evidence to establish malice." Def. Reply at 28. However, Defendants discuss some of the evidence Plaintiff has offered toward this end without providing any substantive evidence of their own.

Plaintiff has affirmatively alleged that the various statements made by Defendants were made with malice, and has offered affidavits in support of that contention. The very nature of the circumstances alleged, those of adverse employment actions made in retaliation for objecting to a supervisor's improper course of action, among others, evokes an air of malice in the issuance of the allegedly defamatory statements. Defendants' contention that no evidence exists to support the presence of malicious action is not well founded.

Defendants have also not established that the allegedly defamatory statements made at various meetings consisted of matters material to the "interest sought to be protected." *See* Deaile, 40 Cal. App. 3d at 847. Although the general purpose of a particular meeting may provide privilege for communication consistent with that same goal, statements made in that meeting that are not relevant to that general end are not similarly privileged. *See* Id.

///
///

13

Given that the burden is on the defendant to demonstrate "that the allegedly defamatory communication was made upon a privileged occasion," <u>Lundquist</u>, 7 Cal. 4th at 1208, it follows that defendant must show that the statements were material to the proceedings.

Defendants have not met their Rule 56(c) burden of showing an absence of evidence to support Plaintiff's claim for defamation.  *See* Fed. R. Civ. P. Rule 56(c).  Even if Defendants were adjudged to have made a prima facie showing in meeting their burden under Rule 56(c), Plaintiff has met her Rule 56(e) burden by sufficiently setting forth specific facts showing that there is a genuine issue for trial.  Accordingly, summary adjudication on this claim is not proper, and Defendants' Motion for Summary Judgment as to Plaintiff's claim for defamation is DENIED.

### 3. Intentional Interference with Contractual Relations; Interference with Prospective Economic Advantage

Defendants argue that Plaintiff's claims for intentional interference with contractual relations and interference with prospective economic advantage fail as a matter of law because either the statements allegedly made by Defendants were privileged or that any loss of clients was not attributable to Defendants.  To prevail on a claim for intentional interference with the performance of a contract, a plaintiff must prove "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

14

1  (4) actual breach or disruption of the contractual relationship;
2  and (5) resulting damage." <u>Pacific Gas and Electric Co. v. Bear</u>
3  <u>Stearns & Co.</u>, 50 Cal. 3d 1118, 1126 (1990).
4      To prevail on a claim for interference with prospective
5  economic advantage, a plaintiff must prove "'(1) an economic
6  relationship between the plaintiff and some third party, with the
7  probability of future economic benefit to the plaintiff; (2) the
8  defendant's knowledge of the relationship; (3) intentional acts
9  on the part of the defendant designed to disrupt the
10 relationship; (4) actual disruption of the relationship; and (5)
11 economic harm to the plaintiff proximately caused by the acts of
12 the defendant.'" <u>Id.</u> (quoting <u>Youst v. Longo</u>, 43 Cal. 3d 64, 71
13 (1987)). The primary difference in proof between the two torts
14 is that the latter "does not require proof of a legally binding
15 contract." The primary analytical difference is that, under
16 interference with prospective economic advantage, defendant's
17 actions are given wider latitude before liability attaches
18 because the "economic advantage interfered with is only
19 prospective." <u>Pacific Gas and Electric Co.</u>, 50 Cal. 3d at 1126.
20     Plaintiff alleges that she had contracts with various
21 private individuals and with the school district, that Defendants
22 intentionally made statements to disrupt these contracts, that
23 the contracts were in fact disrupted, and that Plaintiff has
24 suffered damage as a result. Defendants claim that privilege
25 protects Defendants from liability or that the contracts ended
26 for other reasons.
27 ///
28 ///

15

As stated above, Defendants have not established that any of the statements allegedly made were shielded by privilege. Defendants also cannot establish an absence of evidence to support Plaintiff's claims by simply averring causation by an alternate source. Specifically, Defendants' bald assertion that Plaintiff's loss of clients was attributable to a third party's recommendation does not foreclose the possibility of Defendants' culpability, certainly not in viewing the evidence in a light most favorable to Plaintiff. Accordingly, summary adjudication on these claims is not proper, and Defendants' Motion for Summary Judgment as to Plaintiff's claims for intentional interference with contractual relations and interference with prospective economic advantage is DENIED.

**4.     Intentional Infliction of Emotional Distress**

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because the statements allegedly made by Defendants were either subject to the Workers' Compensation Exclusive Remedy Rule or shielded by privilege as provided in California Civil Code section 47(c). To prove a claim for intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct by the defendant either with intent or reckless disregard, (2) severe and extreme emotional distress suffered by the plaintiff, and (3) actual and proximate causation. <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 903 (1991).

///

To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." <u>Davidson v. City of Westminister</u>, 32 Cal. 3d 197, 209 (1982).

However, conduct by an employer, even outrageous conduct, which is a "normal part of the employment relationship" is subject to the exclusive remedy provisions of California's Workers' Compensation Code (Cal. Lab. Code § 3200 et seq). <u>Cole v. Fair Oaks Fire Protection District</u>, 43 Cal. 3d 148, 160 (1987). Actions which are a normal part of employment include "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances." <u>Id.</u> Claims asserting intentional infliction of emotional distress do not avoid being barred by the Labor Code "by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." <u>Id.</u> The majority of California courts have adopted the <u>Cole</u> test (*see* <u>Id.</u>), which "focuses whether the actionable conduct ... is a normal part of the employment relationship." <u>Horn v. Bradco Int'l, Ltd.</u>, 232 Cal. App. 3d 653, 668 (1991).

Many of the statements allegedly made by Defendants occurred after her employment had terminated and were not related to her position in the VW Program. These statements would not, therefore, be subject to the exclusive remedy provisions of workers' compensation.

///
///
///

17

Because Plaintiff's claim for emotional distress can stand on grounds not subject to the Labor Code, this Court need not decide for purposes of this order what statements, if any, were a normal part of Plaintiff's employment relationship, and thus barred by statute.

Plaintiff has alleged that various Defendants stated that Plaintiff was "unethical," engaging in "greasy palm" activity, "stalking," "incompetent," unlawfully withholding $10,000 from a client, among others. These statements, if proved, would provide a basis sufficient to support a finding of extreme and outrageous conduct. Defendants' blanket and cursory assertions that "there is insufficient evidence of outrageous conduct" and that Plaintiff "has not alleged any outrageous conduct" are therefore unpersuasive.

As to the defense of privilege, Defendants cite Deaile, 40 Cal. App. 3d at 849, in support of the proposition that California Civil Code section 47 bars claims for intentional infliction of emotional distress. Def. Mot. at 24-25. In Deaile, a jury had previously determined that the privilege shielding defendant's statements regarding the plaintiff's claim for defamation was not negated by the presence of malice. Id. at 850. Further, the court ruled that because the statements under the defamation claim were essentially the same statements used to support the emotional distress claim, privilege would defeat the latter as it had the former. Id. The jury's finding in that case, of course, does not inform the issues before this Court.

///

18

As stated above, Defendants have failed to establish as a matter of law that the statements in the present case are shielded by privilege.  The unsupported claims of privilege thus do not aid Defendants in establishing an absence of evidence to support Plaintiff's claim for intentional infliction of emotional distress.  Further, Defendants have not shown that no genuine issue exists as to whether the injurious statements were made with malice, the presence of which would deprive them of the protection of privilege.  Accordingly, summary adjudication on this claim is not proper, and Defendants' Motion for Summary Judgment as to Plaintiff's claim for intentional infliction of emotional distress is DENIED.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated: November 1, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE